DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 EAST BROADWAY BLVD., SUITE 200
TUCSON, AZ 85716-5300
(520) 322-5000

Peter B. Goldman (AZ # 018011)
pgoldman@dmyl.com
Mark D. Lammers (AZ # 010335)
mlammers@dmyl.com
John C. E. Barrett (AZ # 022813)
jbarrett@dmyl.com
Attorneys for Plaintiff

# U.S. DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Southern Skies Opal, LLC, an Arizona limited liability company,<br><br>            Plaintiff,<br><br>vs.<br><br>Azotic Coating Technology, Inc., a Minnesota corporation,<br><br>            Defendant. | NO. 4:12-cv-00073-CKJ<br><br>**FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Southern Skies Opal, LLC ("Southern Skies") seeks a Declaratory Judgment that Southern Skies is not infringing any rights, patent or otherwise, owned by Defendant Azotic Coating Technology, Inc. ("Azotic"). In support of this action, Southern Skies alleges as follows:

**NATURE OF THE ACTION**

1.    This Complaint is an action for declaratory relief under the declaratory judgment statute of the United States of America, 28 U.S.C. § 2201(a).

2. This case arises out of the patent laws of the United States of American, 35 U.S.C. §§ 101 et seq.

**PARTIES**

3. Southern Skies Opal, LLC is an Arizona limited liability company with its principal place of business in Tubac, Arizona.

4. Upon information and belief, Azotic is a Minnesota corporation having its principal place of business in Rochester, Minnesota.

**JURISDICTION AND VENUE**

5. This Complaint for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 is properly filed in respect to an actual controversy of which this Court has jurisdiction under the Patent Laws of the United States (35 U.S.C. § 1 et. seq.) and 28 U.S.C. § 1338.

6. Jurisdiction in this District is also proper under 28 U.S.C. §§ 1332(a) and 1367(a).

7. Complete diversity of citizenship exists. The matter in controversy is between citizens of different states.

8. The matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

9. Personal jurisdiction over the Defendant is proper in this District based on its contacts in this District and the business it advertises for and conducts within this District.

10. On information and belief, since at least 1998 Defendant Azotic has entered the stream of commerce in the State of Arizona by offering and selling its products to wholesale and retail gemstone outlets in the State of Arizona.

11. On information and belief, since at least 1998, Defendant Azotic has continuously and regularly participated in the annual gem shows sponsored by, among others, the Tucson Gem and Mineral Society, the American Gem Trade Association, and other organizations at the annual Gem and Mineral Shows held in Tucson, Arizona in January and February of each year.

12. On information and belief, Azotic has sold its product under its own name and under the name of a wholly owned subsidiary at wholesale and retail outlets at the annual Arizona gem shows as well as elsewhere in Arizona throughout each year since at least 1998.

13. On information and belief, since at least 1998 Defendant Azotic has established and maintained business relationships with contacts in the State of Arizona and has regularly sold product to those contacts at both the wholesale level as well as at the retail level through a wholly owned subsidiary.

14. In addition Defendant Azotic has intentionally reached into the State of Arizona to damage Plaintiff.

15. Defendant knew or had reason to know that its acts alleged herein were intentional acts expressly aimed or purposefully directed at a resident of the State of Arizona, targeting a known resident of the State of Arizona, and would cause harm, the brunt of which would be suffered and which Defendant knew was likely to be suffered in the

1 State of Arizona.

2     16.    Venue is proper in this district under 28 U.S.C. §§ 1391(b), 1391(c), 1400(b),

3 and by reason of the facts alleged in this Complaint.

4     17.    Venue in this district is also proper since Azotic is subject to the personal

5 jurisdiction of this Court under Rule 4 of the Federal Rules of Civil Procedure and the long

6 arm statute of the State of Arizona, Rule 4.1, Arizona Rules of Civil Procedure.

7 **SUBJECT MATTER OF CONTROVERSY AND ACTS COMPLAINED OF**

8     18.    Southern Skies incorporates by reference all allegations stated above as if

9 fully set forth herein.

10     19.    Southern Skies is a resident of this District and sells a variety of jewelry and

11 gemstones including drusy gemstones and enhanced drusy gemstones.

12     20.    Drusy gemstones, also called drusies, are gemstones with crystalline surfaces

13 covered by tiny facets that reflect light.

14     21.    Enhanced drusy gemstones are drusies that have been coated according to one

15 of several possible processes. The coating gives a multi-colored appearance to the drusy as

16 it is held at various angles to a light source. As the angle changes, the color of the drusy

17 changes. In some cases the coating causes reflection of a single, solid color.

18     22.    On or about September 16, 2011, Azotic circulated a three-page circular to

19 retailers in the gem trade (the "Circular"). The Circular is titled "Drusy Gemstones."

20     23.    Azotic stated that the purpose of the Circular was "to educate retail

21 companies, wholesalers and the buyers representing these companies."

22     24.    In the Circular Azotic states that it holds a portfolio of five (5) patents relating

23 to drusy gemstones, and in particular identifies two: U.S. Patent No. 5,853,826, registration

24 date December 29, 1998 (the " '826 Patent") and U.S. Patent No. 6, 997,014, registration

25 date February 14, 2006 (the " '014 Patent").

26

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

25. The Circular states that Azotic has taken action against wholesalers in the trade over the past 10 years and that:

> Beginning in December 2011, Azotic will commence reviewing retail outlets for compliance [with the Patent Act].

26. On information and belief, Azotic warned retailers around the country that its representatives would attend the Tucson Gem and Mineral Show commencing in Tucson, Arizona, on or about Friday, January 27, 2012, and running for approximately two weeks through Friday, February 10, 2012.

27. On information and belief, Azotic further warned retailers that it would take legal action for patent infringement against any retailers who import enhanced drusy gemstones into the United States and sell them. Azotic's position, as stated in the Circular, is that enhanced drusy gemstones sold in the United States must be purchased from Azotic because it owns the patents disclosing and claiming the coating technology used to produce enhanced drusy gemstones.

28. As stated in the Circular, the '826 Patent claims multi-color application of gemstone coatings while the '014 Patent claims coatings that display only one color such as a metal coating (gold, silver, etc.).

29. Azotic further stated in the Circular that "drusy gemstones are covered by a minimum of 8 Azotic patent claims" from the '826 and '014 Patents.

30. On or about January 24, 2012, Plaintiff's business partner, Greg Genovese, received an email from Azotic. The email alleged that Southern Skies was selling products that are covered by Azotic's patents including the '826 Patent and the '014 Patent.

31. More particularly, Azotic further alleged in the email that Plaintiff's business was importing enhanced drusy gemstones into the United States and selling them "either individually or in jewelry settings."

32. Azotic alleged that Plaintiff's business is infringing Azotic's patents because the imported gemstones are manufactured by foreign companies according to the technology disclosed and claimed in the Azotic patents which include the '826 and '014 Patents.

33. Azotic stated that it is the Azotic technology "that has created this [enhanced drusy gemstone] market."

34. The email states that Azotic will

> do what is necessary to protect our intellectual property rights and in doing so regret that we may have to be on opposite sides of persons we have had as customers in the past.

35. The email further states that Azotic "will have to act when the time comes for any intellectual property or trademark infringements."

36. The email adds that Azotic's CEO, Ron Kearnes, and his wife Debbie, intend to visit Southern Skies' booth at the Gem and Mineral Show: "Ron and I will come by your booth in Tucson."

37. Later that same day, January 24, 2012, Mr. Genovese received a second email, this time from Ron Kearnes (the "Second Email").

38. The Second Email quotes another Azotic officer, Kevin Bennet, warning that

> [e]ach person or company that imports or sells a patented product is liable for patent infringement. While a producer, especially a foreign producer may offer to give a letter stating a product does not infringe a patent, the financial issues are owned by the importer or seller, not the producer outside the United States.

39. On information and belief Ron and Debbie Kearnes attended the 2012 Tucson Gem and Mineral Show and visited booths set up by retail outlets from around the United States, including Plaintiff's.

40. On information and belief employees and/or agents and/or representatives of Azotic (collectively the "Azotic Agents") visited Southern Skies' booth as well as the booths

of other dealers doing business in gemstones. On information and belief the Azotic Agents purchased gemstones from the dealers, including Southern Skies.

41. On information and belief, the gemstones purchased by the Azotic Agents, and the receipts for such purchases, were collected by Ron and Debbie Kearnes during their stay in Tucson. On information and belief Azotic will use the purchased gemstones and receipts as the evidentiary basis for patent infringement lawsuits against all dealers selling vapor coated drusy gemstones not enhanced by Azotic or pursuant to a license from Azotic.

42. On information and belief, and according to Azotic's threats in the Circular as well as in the communications with Mr. Genovese, Azotic is preparing a patent infringement lawsuit against all retailers who obtain enhanced drusies from sources other than Azotic.

43. On or about January 24, 2012, Mr. Genovese also spoke to Debbie Kearnes on the telephone. Ms. Kearnes asserted that Mr. Genovese and his organization are infringing the Azotic patents, are "stealing" from Azotic, and are subject to legal action. She then hung up on Mr. Genovese.

44. On information and belief, during the Gem and Mineral Show in Tucson, Arizona in January and February, 2012, Azotic falsely told Southern Skies' current customers and potential customers that Southern Skies is infringing Azotic's patents.

45. On information and belief, while in Tucson Azotic targeted business people who Azotic knows to be doing business with Southern Skies and warned them to stop dealing with Southern Skies or else they too would be dragged into a lawsuit against Southern Skies.

46. On information and belief, Azotic warned off business people from doing business with Southern Skies by telling those business people that Southern Skies is acting wrongfully and unethically.

47. On or about January 29, 2012, Southern Skies delivered coated and cut drusy

gemstones in Tucson to a longtime customer, a gem dealer. The gem dealer had ordered 500 pairs and 500 singles of drusies in rainbow and blue. The amount owed by the gem dealer to Southern Skies for this single transaction was fifteen thousand one hundred fifty dollars ($15,150.00).

48. On information and belief Debbie Kearnes later telephoned the gem dealer and warned him off doing business with Southern Skies.

49. On February 7, 2012, the gem dealer returned the stones to Southern Skies. The gem dealer handed the stones back to Southern Skies at its Gem Show booth. In a telephone conversation a short while later, the gem dealer told Southern Skies that they would no longer do business with Southern Skies and that Southern Skies should "leave Debbie Kearnes alone."

50. Also during the Gem and Mineral Show in January and February, 2012, Southern Skies was negotiating a potential deal with a second gem dealer. The negotiations were being conducted in Tucson at the Gem and Mineral Show.

51. Without warning the second dealer broke off negotiations saying that they were told by Azotic that Azotic was suing Southern Skies and they had been warned to not do business with Southern Skies.

52. In addition, the second gem dealer displayed a text message on their telephone and showed that message to Southern Skies. The message warned the second gem dealer to "stay away" from business deals with Southern Skies. This incident occurred at the Southern Skies' booth at the Tucson Gem Show in February, 2012.

53. All of Defendant Azotic's acts alleged herein were committed with the intention of preventing Southern Skies from importing enhanced drusy gemstones into the United States and selling them in Arizona and elsewhere.

54. Azotic has alleged that it owns all rights to the '826 and '014 Patents and that

by importing and selling enhanced drusy gemstones, Southern Skies is infringing Azotic's rights under the U.S. patent laws.

55. Azotic alleges that claims 1, 4, 7, 9, 12, and 15 of the '826 Patent, and claims 1 and 2 of the '014 Patent (the "Claims in Suit"), are being infringed by retailers who import enhanced drusy gemstones manufactured abroad into the United States.

56. Southern Skies is such a retailer and Debbie and Ron Kearnes, owners of Azotic, have alleged that Southern Skies is infringing the Claims in Suit.

57. Azotic's two emails of January 24, Debbie Kearnes' telephone conversation with Mr. Genovese, and Azotic's threats and unfounded warnings to Southern Skies' customers and prospective customers constitute specific threats to Southern Skies that if it refuses to stop importing and selling its enhanced drusy gemstones, or any similar products that Azotic believes infringe the Claims in Suit, Azotic will proceed by taking legal action against Southern Skies.

58. Azotic's threats and actions have placed Southern Skies in reasonable apprehension of being sued by Azotic, and have created an actual controversy within the scope of 23 U.S.C. § 220l.

59. Southern Skies believes that it has not violated any of Azotic's rights under the patent laws and is not otherwise liable to Azotic for any actions arising out of the use, sale, or offer for sale of its enhanced drusy gemstones.

60. Southern Skies further alleges that the '826 and '014 Patents are invalid as being anticipated or rendered obvious by prior art under 35 U.S.C. §§ 102 and 103 and perhaps other sections of 35 U.S.C. as well.

61. Southern Skies further alleges that the '826 and '014 Patents are invalid pursuant to 35 U.S.C. § 102(b) because the inventions described and claimed in the Azotic patents, including the '826 Patent and '014 Patent, were in use and on sale in the United

1  States more than one year prior to the respective filing dates of each of the Azotic patents
2  including the '826 Patent and the '014 Patent.

3      62.    Unless Azotic is permanently enjoined from doing so, it will continue to
4  assert its perceived rights against Southern Skies, its officers, and its customers.

5      63.    Unless Azotic is enjoined from doing so, Southern Skies will continue to be
6  greatly and irreparably injured and has no adequate remedy at law.

7      64.    Azotic's charges of patent infringement constitute a grave and wrongful
8  interference with Southern Skies' business in this District and elsewhere throughout the
9  United States.

## COUNT ONE

### Declaratory Judgment of Non-Infringement

65. Plaintiff incorporates by reference all allegations stated above as if fully set forth herein.

66. An actual case and controversy exists between Plaintiff and Defendant concerning the '826 Patent and the '014 Patent and whether Plaintiff is infringing the claims of those patents.

67. Defendant has threatened to sue Plaintiff under 35 U.S.C. §§ 101 et seq. for infringing Defendant's patents and for unspecified amounts in damages.

68. Pursuant to 28 U.S.C. § 2201(a), Plaintiff seeks declaratory judgment against Defendant declaring that Southern Skies has not violated any of Azotic's rights under 35 U.S.C. §§ 101 et seq. and is not otherwise liable to Azotic for any actions arising out of the importation, use, sale, or offer for sale of enhanced drusy gemstones.

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

69. Pursuant to 28 U.S.C. § 2201(a), Plaintiff seeks declaratory judgment against Defendant declaring that Southern Skies' importation and sale of drusy gemstones and enhanced drusy gemstones and gemstone products, or any related products, do not infringe any rights owned by Azotic.

WHEREFORE, Plaintiff respectfully requests the Court to enter the relief set forth at the conclusion of this Complaint.

## COUNT TWO

### Declaratory Judgment of Unenforceability and Invalidity

70. Plaintiff incorporates by reference all allegations stated above as if fully set forth herein.

71. An actual case and controversy exists between Plaintiff and Defendant concerning the enforceability and validity of the '826 Patent and '014 Patent.

72. Defendant has threatened to sue Plaintiff under 35 U.S.C. §§ 101 et seq., insisting that the '826 and '014 Patents are enforceable and valid and that Plaintiff is infringing those patents and for unspecified amounts in damages.

73. Pursuant to 28 U.S.C. § 2201(a), Plaintiff seeks declaratory judgment against Defendant declaring that Southern Skies has not violated any of Azotic's rights under 35 U.S.C. §§ 101 et seq. and is not otherwise liable to Azotic for any actions arising out of the importation, use, sale, or offer for sale of enhanced drusy gemstones.

74. Pursuant to 28 U.S.C. § 2201(a), Plaintiff seeks declaratory judgment against Defendant declaring that the '826 Patent and the '014 Patent are unenforceable.

75. Pursuant to 28 U.S.C. § 2201(a), Southern Skies seeks declaratory judgment that the '826 and '014 Patents are invalid as being anticipated or rendered obvious by prior art under 35 U.S.C. §§ 102 and 103 and perhaps other sections of 35 U.S.C. as well.

WHEREFORE, Plaintiff respectfully requests the Court to enter the relief set forth at the conclusion of this Complaint.

## COUNT THREE

### Intentional Interference with Contract
### (Under Arizona law)

76. Plaintiff incorporates by reference all allegations stated above as if fully set forth herein.

77. Southern Skies had valid and existing contracts with its customers, including gem dealers doing business with it and intending to do business with it at the Tucson Gem Show.

78. Southern Skies had valid business expectancies with prospective customers, including gem dealers negotiating business with it at the Tucson Gem Show.

79. Azotic knew of Southern Skies' contracts with its customers including gem dealers doing business and negotiating business with it in Tucson at the Tucson Gem Show.

80. Azotic knew of Southern Skies' prospective business relationships with gem dealers negotiating business with Southern Skies in Tucson at the Tucson Gem Show.

81. Azotic committed intentional acts intended or designed to disrupt Southern Skies' contractual relationships with its customers including the gem dealers doing business and negotiating business with Southern Skies during the Tucson Gem Show.

82. Azotic committed intentional acts intended or designed to disrupt Southern Skies' prospective business relationships with prospective customers including the gem dealers negotiating business relationships with Southern Skies during the Tucson Gem Show.

83. As a natural, foreseeable and proximate consequence thereof Southern Skies' contracts with its customers including gem dealers doing business with it and hoping to do business with it at the Tucson Gem Show were disrupted.

84. As a natural, foreseeable and proximate consequence thereof Southern Skies' business expectancies with prospective customers including gem dealers negotiating business with it at the Tucson Gem Show were disrupted.

85. Azotic's conduct was improper.

86. As a natural, foreseeable and proximate consequence thereof Southern Skies has been damaged.

87. Azotic acted with malice in fact. Azotic deliberately pursued a course of unlawful conduct with the deliberate purpose of damaging Southern Skies.

88. Azotic deliberately continued its actions despite the inevitable harm to Southern Skies that Azotic knew would follow.

89. Pursuant to Arizona law an award of punitive damages in Southern Skies' favor is appropriate.

WHEREFORE, Plaintiff respectfully requests the Court to enter the relief set forth at the conclusion of this Complaint.

# PRAYER FOR RELIEF

WHEREFORE, Southern Skies prays for judgment as follows:

1. For a judgment and declaration that the sales of Southern Skies' drusy gemstone and enhanced drusy gemstone products, or any related products, do not infringe any rights owned by Azotic;

2. For a judgment and declaration that the '826 Patent and '014 Patent are invalid under at least one section of 35 U.S.C.

3. For a decree enjoining and restraining Azotic from all further charges of infringement and violations of rights, including:

    a. threatening Southern Skies' existing or prospective customers, suppliers, dealers or any users of its drusy gemstone and enhanced drusy gemstone products with statements or representations that they are performing acts or engaged in activity that violate Azotic's rights; and

    b. initiating or maintaining infringement litigation, or threatening litigation, against Southern Skies' existing or prospective customers, suppliers, dealers or any users of its drusy gemstone and enhanced drusy gemstone products that asserts or charges infringement or other violation of Azotic's rights;

4. For damages in the amount proven at trial;

5. For punitive damages in the amount proven at trial;

5. For Southern Skies' attorneys' fees;

6. For Southern Skies' costs of suit incurred herein; and

7. For such other relief as the Court believes is just and proper.

## JURY DEMAND

Southern Skies demands a jury trial on all triable issues.

DATED this 14th day of February, 2012.

                              DECONCINI MCDONALD YETWIN & LACY, P.C.

                              By: /s/ Peter B. Goldman
                                  Peter B. Goldman
                                  Mark D. Lammers
                                  John C. E. Barrett
                                  2525 E. Broadway Blvd., Suite 200
                                  Tucson, AZ 85716-5300
                                  Attorneys for Plaintiff

# VERIFICATION

STATE OF ARIZONA   )
                   )   ss:
COUNTY OF PIMA     )

Vincent Gulino, being first duly sworn, upon his oath deposes and says:

1. That he is a Member of the Plaintiff limited liability company in the above-entitled action;

2. That he has read the foregoing First Amended Verified Complaint; and

3. That the information and statements contained herein are true to the best of his knowledge, except for those matters alleged on information and belief, and as to those matters, he believes them to be true.

_____
Vincent Gulino

SUBSCRIBED AND SWORN TO before me this \_\_\_\_\_ day of February, 2012, by Vincent Gulino.

_____
My Commission Expires:         Notary Public

_____

DeConcini McDonald Yetwin & Lacy, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300

Case Name; Case No. _____
I:\FILES\DOCS\GULI01\120075\FORM\M99330.DOC
16
Page 16 of 17

# CERTIFICATE OF SERVICE

I certify that I electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing, and via first class mail and email, to the following:

>Azotic Coating Technology, Inc.
>c/o Eric Snustad, Esq.
>200 South 6th Street
>Minneapolis, MN 55402
>esnustad@fredlaw.com

Dated this 15th day of February, 2012.

>/s/   Edwina D. Campbell

DECONCINI MCDONALD YETWIN & LACY, P.C.
2525 East Broadway Blvd., Suite 200
Tucson, AZ 85716-5300