**HAYES SOLOWAY P.C.**
Stephen B. Mosier, Arizona State Bar #024847
Clark E. Proffitt, Arizona State Bar #026343
4640 E. Skyline Drive
Tucson, Arizona 85718
Telephone:  (520) 882-7623
Facsimile:   (520) 882-7643

*Attorneys for Defendant Azotic Coating Technology,Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| SOUTHERN SKIES Opal, LLC, an Arizona limited liability company,<br><br>                              Plaintiff,<br><br>vs.<br><br>Azotic Coating Technology, Inc., a, Minnesota corporation,<br><br>                              Defendant. | **Case No.  CV-12-0073-CKJ**<br><br>**Honorable Cindy K. Jorgenson** |

**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURIDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendant, Azotic Coating Technology, Inc. (hereinafter Azotic), by and through its counsel, respectfully moves this Court to dismiss Plaintiff Southern Skies Opal, LLC's (hereinafter SOUTHERN SKIES) First Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Plaintiff cannot show that a justiciable case or controversy exists to satisfy the requirements of Article III of the U.S. Constitution (as to Counts 1 and 2), and has failed to sufficiently plead a critical element of Plaintiff's claim for intentional interference with contract.

**I.      Facts:**

The patents at issue in this action deal, at least in part, with drusies, a particular type of precious or semi-precious stones that are "enhanced" with a deposited coating. First Amended Verified Complaint for Declaratory Judgment [Dkt #9] (hereinafter "FAC"), ¶¶ 20, 21. The coating is typically provided to brighten, deepen, alter, or enhance the color of the substrate that it coats. Declaration of Debra Kearnes, submitted concurrently herewith as Exhibit A (hereinafter "Kearnes Decl.") at ¶ 4.

Defendant Azotic was founded in 1993 and has over time become one of the largest providers of coating services for many products in the jewelry industry. *Id*. at ¶ 5. Azotic is continuously researching and developing new coating technologies, and is the owner of several issued patents related to enhancements for jewelry related products, which patents are important to its business. *Id*.

In approximately September, 2011, Azotic transmitted a letter exclusively to its own distributors. *Id*. at ¶6. The letter provided information to these distributors to better educate them, as the wholesalers and the buyers representing Azotic. *Id*. *See also* Exhibit 1 to Kearnes Decl. Among other things, the letter states that (1) "Azotic has a number of patents on enhancement of gemstone materials." (2) "Azotic owns a registered Trademark for "Mystic®" in regards to gemstones." and (3) "Azotic recommends that any company thinking about using Drusy not enhanced by Azotic contact an experienced patent attorney for review." *Id*. at ¶ 7 and Exhibit 1.

Azotic did not threaten any action in the letter it sent to its distributors. *Id*. at ¶ 9 and Exhibit 1 thereto. Very much to the contrary of what Plaintiff errantly has alleged in its pleading, the Azotic letter in point of fact states:

2

> Azotic is happy to provide our opinion if a sample is provided for review. Legal action will not be taken based on the results of the sample review. However, if determined to be illegal Azotic will request termination of use. *Id*.

Plaintiff SOUTHERN SKIES has only existed since July 7, 2011, and according to the available public records was originally formed "for real estate investments." *Id*. at ¶ 10 and Exhibit 2 thereto. According to the allegations of Plaintiff's Complaint, SOUTHERN SKIES shifted emphasis at some point subsequent to July 7, 2011 to begin to sell "drusy gemstones and enhanced drusy gemstones." FAC at ¶ 19. A drusy is a layer of crystals naturally formed within a mineral crust, like the inner cavity of a geode. Kearnes Decl. at ¶ 8. While Defendant provides coating services for drusies, Plaintiff SOUTHERN SKIES is not now, nor has it ever been a customer or even a business acquaintance of Azotic. *Id*. at ¶ 11. Indeed, Azotic has never had any communications of any kind with Plaintiff SOUTHERN SKIES prior to Plaintiff's filing of this declaratory judgment action. *Id*.

Since SOUTHERN SKIES has never had any communications of any kind with Azotic, SOUTHERN SKIES' allegations purport to be based on alleged communications with some other individual, Greg Genovese, who is ambiguously alleged to be Plaintiff's "business partner." FAC at ¶ 30.[1] Mr. Genovese was a very small, minor customer of Azotic since approximately March 11, 1996. Kearnes Decl. at ¶ 12. In May, 2011, Mr. Genovese wrote a letter to Debra Kearnes, the Office/Sales Manager of Azotic. *Id*. at ¶ 13 and Exhibit 3 thereto. Mr. Genovese explained that he would soon begin "representing" a "Brazilian cutter," and that his work with them would allow him to pay the $9,080.90 outstanding bill, which Genovese

---

[1] Defendant notes that Mr. Genovese is not listed as a member, manager, or agent of Plaintiff in Plaintiff's recently-filed articles of incorporation. Kearnes Decl. at ¶ 10 and Exhibit 2 thereto.

admittedly owes Azotic. *Id*. Azotic heard nothing more from Mr. Genovese for several months. *Id*.

On approximately January 20, 2012, Debra Kearnes telephoned Mr. Genovese with regard to the $9,080.90 unpaid balance still owed to Azotic for coating services performed approximately one year earlier. *Id*. at ¶ 14. Mr. Genovese indicated that the unnamed "Brazilian company" he was allegedly working with at that time was manufacturing drusy enhancements by vapor deposition of enhancement coatings, but that these drusies were only being sold in Brazil and Italy. Id. Mrs. Kearnes noted that Azotic would need payment for the amount owed by Mr. Genovese to Azotic at the Tucson Gem Show, and that she would come by to see Mr. Genovese at that show. *Id*.

On January 23, 2011, Mr. Genovese sent Mrs. Kearnes a long email. *Id*. at ¶ 15 and exhibit 4 thereto. In the email, Mr. Genovese stated that he had been concerned, "since Rosito, the owner of the factory . . . showed me the letter that you and Ron have been circulating around." *Id*.[2] Mr. Genovese went on to describe his concern and how it could be addressed:

> . . .What my concern is is this, it's Vincent and I who will be selling the coated stones here in the US that are manufactured there in Brazil, we have many in our inventory at the moment, it is US that will be giving you a Royalty [sic] here in the US if we are in violation of your 'intellectual property', we feel that you deserve it . . ..
> We have a booth at the Riverpark Inn . . . we're looking forward to seeing you there, in fact, I will have with me all the scientific data that was given to me by the man who actually built all of Rositos [sic] machines there in Sao Paolo, we can go out to dinner and talk things over if you like.
> . . . Also Debbie, with this new line we have [we] will be offering colors in it that only you have and we will be using those colors in the line, I have NO DOUBT that this will take off especially with the networks but we want to have

---

[2] There is no indication anywhere that "Rosito" is a member or employee of SOUTHERN SKIES. The name is not familiar to Azotic, and is not mentioned by SOUTHERN SKIES in its pleadings. It is unclear from the pleadings whether "Rosito" has an interest in, or is involved in, or perhaps may be behind, this litigation, or not.

4

> ALL our cards in order when they approach us, I repeat, we DO NOT want any problems with you and Ron and we need to talk . . ..
> Debbie, we'll sit down and I'll fill you in on all the details and we'll go from there." *Id*.

The next day, Mrs. Kearnes emailed a response to Mr. Genovese. *Id*. at ¶ 16 and Exhibit 5 thereto. In her response, Mrs. Kearnes stated:

> "[Y]ou can manufacture as we do as long as you respect the intellectual property rights of Azotic for Surface Enhanced Designer Gemstones ™. . . . We do not wish to cause any problems for you Greg or your associates, but in the U.S. and its territories we will have to act when the time comes for any intellectual property or trademark infringements.
> . . .
> Ron and I will come by your booth in Tucson. I hope that we can avoid future litigation and the animosity this normally causes. *Id*.

Mr. Genovese made no effort to enter into any discussion regarding whether any particular drusies or other products infringed any particular claims of any particular patents. *Id*. at ¶ 17. Nonetheless, SOUTHERN SKIES (not Mr. Genovese) filed this declaratory judgment action a mere week later, two days prior to the Tucson Gem Show, which took place from February 2-17, 2012. *Id*. at ¶ 18. The parties [SOUTHERN SKIES and Azotic] have not had any direct communications at any time (except for post-complaint correspondence exchanged between their respective legal counsel), and Azotic has not had any direct communications with Mr. Genovese in 2012 except as delineated above. *Id*. at ¶ 17.

## II. LAW AND ARGUMENT

### A. LACK OF SUBJECT MATTER JURISDICTION FOR COUNTS I AND II: DECLARATORY JUDGMENT OF NONINFRINGEMENT AND INVALIDITY OF PATENTS.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

5

could be sought." 28 U.S.C. § 2201(a). In order for the District Court to have subject matter jurisdiction of a declaratory judgment action, the action must meet the "case or controversy" requirement of Article III of the U.S. Constitution. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239 (1937). For this determination in a patent case, as here, Federal Circuit law is controlling. *Minnesota Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672 (Fed. Cir. 1991). A case or controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *3M Co. v. Avery Dennison Corp.*, 2012 U.S. App. LEXIS 6172 (Fed. Cir. Mar. 26, 2012)

> The Supreme Court summarized the analysis:
>
> "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007). The allegations of the pleadings are not presumed to be true, but if the facts alleged are contested, the declaratory complainant bears the burden of proof on such allegations. *Cardinal Chemical Co. v. Morton International* 508 U.S. 83, 95 (1993). ("In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy.")

Subject matter jurisdiction must be found at the date and time of filing of the original complaint of a declaratory action. *Innovative Therapies, Inc., v Kinetic Concepts, Inc*., 599 F.3d

1377, 1384 (Fed. Cir. 2010). Events occurring after the filing of the original complaint cannot confer subject matter jurisdiction over a declaratory action. *Id*.[3]

Moreover, even if there were a case or controversy based on proper pleadings, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

The immediacy and reality inquiry to determine subject matter jurisdiction is analogized to the doctrine of standing. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) ("This 'immediacy and reality' inquiry can be viewed through the lens of standing."). "To satisfy standing, the plaintiff must allege (1) an injury-in-fact, i.e., a harm that is concrete and actual or imminent, not conjectural or hypothetical, (2) that is fairly traceable to the defendant's conduct, and (3) redressable by a favorable decision." *Id*. (quotation marks omitted). The Federal Circuit explained:

> "Rather than a purely subjective fear or the mere existence of a potentially adverse patent alone, the alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a "restraint on the free exploitation of non-infringing goods," or an imminent threat of such restraint.
> A patentee can cause such an injury in a variety of ways, for example, by creating a reasonable apprehension of an infringement suit, demanding the right to royalty payments, or creating a barrier to the regulatory approval of a product that is necessary for marketing."

---

[3] Defendant notes that Plaintiff's First Amended Complaint includes averments of purported actions allegedly occurring <u>after</u> the filing date of the original Complaint. See, First Amended Complaint ¶¶ 39-52. The "Amended Complaint" is thus actually and definitionally a "supplemental" complaint, which is the proper pleading when a party seeks to add claims or issues based on events that occurred after the filing of the original complaint. *See* Fed. R. Civ. P. 15(d). That rule requires a party to seek leave to file any supplemental pleading. *Id*. Accordingly, the First Amended Complaint would appear to be procedurally improper, but in any event under controlling case-law any allegations occurring after January 31, 2012 cannot be considered in the subject matter jurisdiction analysis. *Innovative Therapies,* 599 F.3d at 1384.

*Id*. Accordingly, some affirmative act must be committed by the patentee directed at the specific plaintiff to provide the injury and establish subject matter jurisdiction. *Ass'n for Molecular Pathology v. United States PTO*, 653 F.3d 1329, 1344, 1348 (Fed. Cir. 2011) ("declaratory judgment jurisdiction will not arise merely on the basis that a party learns of the existence of an adversely held patent, or even perceives that such a patent poses a risk of infringement, in the absence of some affirmative act by the patentee **directed at the specific plaintiffs.**" (emphasis supplied)).

Even broad and widespread enforcement activity on the part of a patentee cannot confer subject matter jurisdiction absent some affirmative acts directed at the specific plaintiff. *Adobe Sys. v. Kelora Sys. LLC*, 2011 U.S. Dist. LEXIS 140675, 10-12 (N.D. Cal. Dec. 7, 2011) (citing *Ass'n for Molecular Pathology*, 653 F.3d at 1344-48). In the absence of a direct communication, communications to business Associates or related entities must specifically refer to the plaintiff or its products by name and identifiy the products and services provided by the plaintiff as the infringing items. *See Arris Group Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1377 (Fed. Cir. 2011) (describing in depth how "BT explicitly and repeatedly singled out Arris' products used in Cable One's network to support its infringement contentions" before finding that, under all of the circumstances, there was a dispute between Arris and BT sufficient to constitute a case or controversy); *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc*., 846 F.2d 731, 736 (Fed. Cir. 1988) (letters to a customer "citing Arrowhead and only Arrowhead and saying Arrowhead is not licensed").

Plaintiff SOUTHERN SKIES' claim in this case seeking a declaratory judgment must fail for this reason alone. While the pleadings (apparently intentionally) conflate Plaintiff with Plaintiff's alleged "business partner," Mr. Genovese, Azotic has never communicated with the

8

"specific plaintiff" [SOUTHERN SKIES] in this action, beyond communications among counsel for the respective parties resulting from and occurring <u>after</u> the date of filing of this litigation. Kearnes Decl. at ¶ 11. Indeed, SOUTHERN SKIES has not even alleged a single communication between SOUTHERN SKIES and Azotic, nor has SOUTHERN SKIES fulfilled its burden of proof in establishing that Azotic has committed any act or made any statement directed at SOUTHERN SKIES in any way. *See*, FAC. With no affirmative act directed at this specific plaintiff, SOUTHERN SKIES' declaratory judgment action under the patent laws must be dismissed.

Moreover, even if the actions alleged to have been directed at Mr. Genovese could somehow be deemed directed at SOUTHERN SKIES, an entity unknown to Azotic apart from SOUTHERN SKIES' filing of this litigation, the actions alleged fail to establish subject matter jurisdiction. In fact, the Federal Circuit has consistently declined to accept declaratory jurisdiction in circumstances quite similar to those at bar. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008); *Innovative Therapies, Inc., v Kinetic Concepts, Inc.*, 599 F.3d 1377 (Fed. Cir. 2010). In *Prasco*, the declarative plaintiff had sent a sample of its product to the defendants, and asked for a covenant not to sue. The defendants refused to sign any such covenant. The plaintiff alleged that defendants marking of its own products with patent numbers, together with a history of litigation and the failure to sign the covenant not to sue, created the "concrete or actual or imminent" harm. The Federal Circuit categorically and specifically rejected the plaintiff's declaratory claims:

> "Here, where Prasco has suffered no actual present injury traceable to the defendants, and the defendants have not asserted any rights against Prasco related to the patents nor taken any affirmative actions concerning Prasco's current product, one prior suit [between plaintiff and defendant] concerning unrelated patents and products and the defendants' failure to sign a covenant not to sue are simply not sufficient to establish that Prasco is at risk of imminent

9

> harm from the defendants and that there is an actual controversy between the parties of sufficient immediacy and reality to warrant declaratory judgment jurisdiction. Although we understand Prasco's desire to have a definitive answer on whether its products infringe defendants' patents, were the district court to reach the merits of this case, it would merely be providing an advisory opinion. This is impermissible under Article III.

Id. at p. 1341-1342.

In *Innovative Therapies*, the declaratory plaintiff relied heavily on two telephone calls from plaintiff to the defendant. *Id*. at p. 1380. In the phone call, defendant states that it would "aggressively go after [plaintiff], particularly if [plaintiff's product] is foam-based. *Id*. at p. 1381. When defendant was asked if the odds were "100%" that defendant would sue plaintiff, the defendant responded "'100%, no doubt about it,' and stated that any product that 'scratches the surface of our patents' would be the subject of a lawsuit." *Id*.  The District Court and the Federal Circuit both held that the informal conversations "did not constitute a threat of suit for patent infringement against a device that had not been seen and evaluated for infringement of any patent." *Id*.

Like the defendant in *Prasco*, Azotic has not asserted any rights against SOUTHERN SKIES (nor, indeed, even against Mr. Genovese) related to the patents nor has Azotic taken any affirmative actions concerning SOUTHERN SKIES or Mr. Genovese's as of yet undisclosed current product.  *See*, Kearnes Decl. ¶¶ 12-18 and Exhibits 1-5 thereto. Like the defendant in *Innovative Therapies*, Azotic has never even seen any relevant products from SOUTHERN SKIES or Mr. Genovese, nor has any product from SOUTHERN SKIES or Mr. Genovese been evaluated for infringement of any patent. Id. at ¶ 17. Moreover, like the defendant in *Innovative Therapies*, Azotic never initiated any discussions with Mr. Genovese regarding any Azotic patent. *Id*. at ¶¶ 13-17. Instead, it was Mr. Genovese who stated that he would be offering colors "that only you have" and who offered to "sit down and . . . fill you in on all the details

10

and we'll go from there." *Id*. at ¶ 15 and Exhibit 4 thereto. Indeed, Azotic explicitly stated that "you can manufacture as we do as long as you respect the intellectual property rights of Azotic for Surface Enhanced Designer Gemstones™." *Id*. at ¶ 16 and Exhibit 5 thereto. These communications in fact show that Azotic has never seen either SOUTHERN SKIES' products or any products of Mr. Genovese, has never asserted any position as to whether any claim of any patent would or would not be infringed by Plaintiff or Mr. Genovese, and was open to visit with Mr. Genovese so that, in his words, he could "fill [them] in on all the details and we'll go from there." *Id*. at ¶¶ 13-17 and Exhibits 3-5 thereto. Before the patent-holder Azotic could receive any details, Plaintiff filed suit. *Id*. at ¶ 17.

This Court does not give such advisory opinions, as indeed those are absolutely precluded by Article III of the U.S. Constitution. Accordingly, Plaintiff's Counts One and Two for a declaratory judgment do not meet the case or controversy requirement of Article III, and must be dismissed.

### B. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO COUNT 3: INTENTIONAL INTERFERENCE WITH CONTRACT.

With respect to Count 3 of Plaintiff's First Amended Complaint, that claim should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), insofar as it is clear that no relief can be granted under any set of facts that could be proved consistent with the well-pleaded allegations in the pleading. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989). "Threadbare recitals of the elements of [each] cause of action, supported by mere conclusory statements" however, cannot sustain a claim. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, as the Supreme Court recently explained, a pleading "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

11

To the contrary, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* That is, the complaint must "nudge[] . . . the claim . . . across the line from conceivable to plausible." *Id.* at 1951. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

Under Arizona law, here presumably governing Count 3, a *prima facie* case of intentional interference with contract requires:

> (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly.

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 493 (Ariz. 2002). Similarly, a *prima facie* case of intentional interference with a business expectancy requires:

> (1) The existence of a valid contractual relationship or business expectancy;
> (2)  knowledge of the relationship or expectancy on the part of the interferer;
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
> (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 386, 710 P.2d 1025, 1041 (1985) (superceded by statute in other respects). Accordingly, it is a necessary element of each claim that the defendant have knowledge of the specific relationship with which it is alleged to have interfered. *See, Id*.

Plaintiff has utterly failed to allege at least this element of the claim with any specific, non-conclusory (i.e. well-pleaded) facts within the meaning of the now controlling *Iqbal* and

*Twombly* analysis. The First Amended Complaint Count 3 merely alleges that "Azotic knew of Southern Skies' contracts with its customers" and that "Azotic knew of Southern Skies' prospective business relationships with gem dealers negotiating business with Southern Skies in Tucson at the Tucson Gem Show." FAC at ¶¶ 79, 80. Such conclusory allegations cannot support a claim for intentional interference with contract. *Capitol West Appraisals LLC v. Countrywide Fin. Corp.*, 2012 U.S. App. LEXIS 2232, 3-4 (9th Cir. Wash. Feb. 3, 2012) ("The SAC merely states that Countrywide had knowledge of economic relationships between Capitol West and mortgage brokers and lenders without any further specific allegations. These conclusory statements are not entitled to the presumption of truth, and are insufficient to plead Countrywide's knowledge.")(citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).[4]

Because Plaintiff has failed to plead by well-pleaded specific factual averments at least this element of Count Three, Plaintiff's claim for intentional interference with contract must be dismissed.[5]

### III.   CONCLUSION

Because Plaintiff has failed to establish subject matter jurisdiction over the declaratory patent claims, and has failed under *Iqbal* to sufficiently plead its claim for intentional interference with contract, all three claims of Plaintiff's First Amended Complaint must be dismissed.

---

[4] Ninth Circuit case-law governs as to the elements and pleading requirements of Count 3. McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356 (Fed. Cir. 2007). ("The decision to grant a motion to dismiss is a purely procedural question not pertaining to patent law that we review under regional circuit law.").

[5] Moreover, it would appear that the post-Complaint factual averments of the First Amended Complaint are not even properly before the court, insofar as by rule a supplemental pleading requires leave of court, not sought or obtained in this case. *See* Fed. R. Civ. P. 15(d) (requiring a party to seek leave to file any supplemental pleading.)

**DATED this 13th day of April, 2012.**

        RESPECTFULLY SUBMITTED,

        /s/ Stephen B. Mosier
        Stephen B. Mosier, Esq., AZ Bar #024847
        Clark E. Proffitt, Esq., AZ Bar #026343
        HAYES SOLOWAY P.C.
        4640 E. Skyline Drive
        Tucson, AZ 85718
        (520) 882-7623
        (520) 882-7643 (facsimile)
        smosier@hayes-soloway.com
        Attorneys for Defendant Azotic Coating
        Technology Inc.

### CERTIFICATE OF SERVICE

I certify that on April 13, 2012, I caused service of the following document: "**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**" to be made by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all counsel of record who have filed a Notice of Consent to Electronic Service in this action.

A copy of the foregoing was also emailed this 13th day of April, 2012 to:

Peter B. Goldman, Esq.
John C.E. Barrett, Esq.
DECONCINI MCDONALD
YETWIN & LACY, P.C.
2525 E. Broadway Blvd, Ste 200
Tucson, AZ 85716
pgoldman@dmyl.com
jbarrett@dmyl.com


   /s/ Traci Lopez
Traci Lopez